## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TAMESHA SHUNAYE HENDERSON,** | ) | **CHAPTER 13** |
| | ) | |
| DEBTOR. | ) | **CASE NO. 17-11484-SDB** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | |
| | ) | **JUDGE: SUSAN D. BARRETT** |
| **FLAGSTAR BANK, FSB,** | ) | |
| | ) | |
| MOVANT. | ) | |
| **V.** | ) | - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| | ) | **CONTESTED MATTER** |
| **TAMESHA SHUNAYE HENDERSON,** | ) | |
| **HUON LE, TRUSTEE,** | ) | |
| | ) | |
| RESPONDENTS. | ) | |

### MOTION FOR RETROACTIVE RELIEF FROM AUTOMATIC STAY AND WAIVER OF 30-DAY REQUIREMENT UNDER § 362(E)

FLAGSTAR BANK, FSB ("Movant"), by and through its undersigned counsel, and pursuant to Rules 4001 and 9014 of the Bankruptcy Rules and § 362(d) of the Bankruptcy Code, requests validation of the October 3, 2017, foreclosure sale and/or retroactive relief from the automatic stay provided by § 362(a) of the Bankruptcy Code and waiver of the 30-day requirement under § 362(e). In support thereof, Movant alleges as follows:

1.

On or about January 15, 2014, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST OPTION MORTGAGE, LLC ("Original Lender") made a secured loan to Debtor, TAMESHA SHUNAYE HENDERSON, in the principal amount of $137,196.00 ("Loan"). The Loan is evidenced and secured by a promissory note ("Note") and a security deed ("Security Deed") encumbering that certain real property known as 3721

HEADSTALL LANE, DEARING, GA 30808 ("Property"), said Security Deed being recorded on January 27, 2014 at Deed Book 618 / Page 106, of the McDuffie County, Georgia land records, all of which Debtor executed in favor of the Original Lender on January 15, 2014.  True and correct copies of the Security Deed and Note are attached hereto as Exhibits "A" and "B," respectively.

2.

Through the Security Deed, the Original Lender acquired a secured interest in the Property, together with all improvements, easements, rights, appurtenances and fixtures on the Property.

3.

On or about November 13, 2014, Original Lender assigned all of its right, title, and interest in the Security Deed to Movant.  A true and accurate copy of the Assignment is attached hereto as Exhibit "C".

4.

The Noteholder has the right to foreclose because Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan.  Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.

5.

Movant's secured interest in the Property is perfected and continuing.

6.

Debtor filed a voluntary Chapter 13 bankruptcy petition in this Court on October 2, 2017.

7.

Trustee is named as a respondent solely in his official capacity.

8.

On or about January 5, 2015, Debtor filed Bankruptcy Case No. 15-10018 in this Court. Subsequently, on or about May 25, 2017, Movant file a Motion for Relief from Automatic Stay (Doc. No. 89). A Consent Order Granting Movant's Motion for Relief from Automatic Stay was entered by this Court on or about July 19, 2017 (Doc. No. 95).

9.

On or about August 22, 2017, Movant then sent its required statutory Notices of Foreclosure Sale scheduled for October 3, 2017. Pursuant to the terms of the Consent Order Granting Movant's Motion for Relief from Stay entered in Bankruptcy Case No. 15-10018 and the state laws and remedies provided by the security deed and note securing said Property, Movant foreclosed on the Property on October 3, 2017 at 10:08 a.m. EST.

10.

On or about October 2, 2017, Debtor filed a unilateral Motion to Dismiss Bankruptcy Case No. 15-10018 (Doc. No. 97) and without an Order entered granting its Motion to Dismiss, Debtor filed this instant Bankruptcy case. On or about October 6, 2017, three days after the foreclosure sale on said Property, an Order granting Debtor's Motion to Dismiss Bankruptcy Case No. 15-10018 was entered by this court (Doc. No. 98).

11.

Section 362(d) of the Bankruptcy Code requires a Court to grant relief from the automatic stay by terminating, modifying or annulling the stay, for cause, including the lack of adequate

protection of a lien holder's interest in its collateral.  Moreover, § 362(d)(4) states that a Court shall grant relief from the automatic stay "with respect to a stay of an act against real property … if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property."

12.

Movant submits that subsection (B) applies here.  Debtor filed unilateral bankruptcy petitions to hinder the scheduled foreclosure sale – satisfying the prong concerning multiple bankruptcy filings. Debtor particularly filed the instant petition prior to and without this Court's dispensation to dismiss Case No. 15-10018, in a patent attempt to delay, hinder, and defraud Movant's state law rights pursuant to the relief from automatic stay granted by this Court in Case No. 15-10018 to foreclose on the Property. Movant submits that it acted in good faith, and did not egregiously or intentionally violate the bankruptcy stay.

13.

If Movant is not permitted to exercise it legal rights against the Property pursuant to its Security Deed, including without limitation finalizing the properly conducted foreclosure sale, Movant will suffer irreparable injury, loss and damage.

14.

Movant requests a waiver of the 30-day requirement under § 362(e).

WHEREFORE, Movant respectfully prays and requests of this Court as follows:

(a)     that this Court grant retroactive relief from the automatic stay nunc pro tunc to

October 3, 2017, such that the foreclosure sale did not violate any automatic stay; and

(b) that the terms of Bankruptcy Rule 4001(a)(3) be waived so that Movant may immediately enforce and implement the Order granting this Motion; and

(c) that if a hearing cannot be held within thirty (30) days from the filing of the Motion as required by 11 U.S.C. § 362, Movant, by and through counsel, waives this requirement and agrees to the next earliest possible hearing date;

(d) that the costs and fees associated with filing and prosecution of this Motion by Movant, including, but not limited to Movant's attorney fees and the associated filing fee in the amount of $1,031.00, be borne by Debtor.

Dated: October 31, 2017

Respectfully submitted

**_/S/ Matthew F. Totten_____**
Matthew F. Totten
Georgia Bar No. 798589
Weissman PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500
matthewt@weissman.law
ATTORNEYS FOR MOVANT

<u>**CERTIFICATE OF SERVICE**</u>

I, C. Brent Wardrop, certify that I am over the age of 18 and that on this date, I served a copy of the foregoing **Motion for Relief from Automatic Stay** by First Class United Stated Mail, with adequate postage prepaid, on the following persons or entities at the addresses stated:

TAMESHA SHUNAYE HENDERSON
3721 HEADSTALL LANE
DEARING, GA 30808

JOHN P. WILLS, Esq.
POST OFFICE BOX 1620
THOMSON, GA 30824

HUON LE
P.O. BOX 2127
AUGUSTA, GA 30903

Dated: October 31, 2017

*/S/ Matthew F. Totten*
Matthew F. Totten
Georgia Bar No. 798589
Weissman PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500
brentw@weissman.law
ATTORNEYS FOR MOVANT



Deed        Doc: SD

**Recorded 01/27/2014 12:00PM**
Georgia Intangible Tax Paid: $412.50

Connie H. Cheatham

Clerk Superior Court, McDuffie County, Ga.

Bk 00618    Pg 0106-0115

When recorded, return to:
First Option Mortgage, LLC
Attn: Final Document Department
400 Interstate North Pkwy SE, Suite 1600
Atlanta, GA 30339

*Rec 2nd*

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

RECEIVED FEB 27 2014

Title Order No.:
Escrow No.: Fidelity National
LOAN #:

——————————— [Space Above This Line For Recording Data] ———————————

**State of Georgia**          **SECURITY DEED**

| FHA Case No. |
|---|
| MIN: |
| MERS PHONE #: |

THIS SECURITY DEED ("Security Instrument") is given on **January 15, 2014.**    The Grantor is
**TAMESHA HENDERSON, AN UNMARRIED WOMAN, AND JANNIE MIMS, AN UNMARRIED WOMAN, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP**

and whose address is

**132 Chamberlin Ferry Rd
McCormick, SC 29835**

("Borrower").
**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.**
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**First Option Mortgage, LLC, a Limited Liability Company**

("Lender") is organized and
existing under the laws of **Georgia,**
and has an address of **400 Interstate North Pkwy SE, Suite 1600, Atlanta, GA 30339.**

Borrower owes Lender the principal sum·of **ONE HUNDRED THIRTY SEVEN THOUSAND ONE HUNDRED NINETY SIX AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$137,196.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **February 1, 2044.**
The Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,·advanced under

**FHA Georgia Deed of Trust - 4/96**
Ellie Mae, Inc.

Page 1 of 6

Initials: _J-m_ , TH
GAEFHADE  0813
GAEFHADE
01/15/2014 07:16 AM PST

**Exhibit 6**

paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in
**McDuffie** County, Georgia:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**

which has the address of **3721 Headstall Lane, Dearing,**

[Street, City]

**Georgia 30808** ("Property Address");
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

FHA Georgia Deed of Trust - 4/96
Ellie Mae, Inc.

Page 2 of 6

Initials: _____ TH
GAEFHADE 0613
GAEFHADE
01/15/2014 07:16 AM PST

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:
(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

FHA Georgia Deed of Trust - 4/96
Ellie Mae, Inc.

Page 4 of 6

Initials: _J_M_  _TH_

GAEFHADE  0618
GAEFHADE
01/15/2014 07:16 AM PST

**Exhibit 6**

LOAN #:

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.**

**If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Planned Unit Development Rider
☐ Graduated Payment Rider    ☒ Other(s) [specify]  *Waiver of Borrower's Rights*  AD

Initials: _____  TH

GAEFHADE  0613/
GAEFHADE
01/15/2014 07:16 AM PST



LOAN #: ███████

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

*Jannie Mims*                                                    1-15-14  (Seal)
**JANNIE MIMS**                                                        DATE

*Tamesha Henderson*                                                      (Seal)
**TAMESHA HENDERSON**                                                    DATE

_____
**Unofficial Witness**

*Janis A. Lindsey*
Notary Public, _____Janis A. Lindsey_____    My commission expires May 27, 2021
~~MCDUFFIE~~ County
McCormick County SC

**Lender: First Option Mortgage, LLC**
**NMLS ID: 123411**
**Loan Originator: Charlie Stalker**
**NMLS ID: 212232**

GEORGIA -

Grantor: **Jannie Mims**

Date: **January 15, 2014**

Loan Number: ███████

Property Address: **3721 Headstall Lane**
**Dearing, GA 30808**

Lender: **First Option Mortgage, LLC**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

_Jannie Mims_      _1-15-14_
**JANNIE MIMS**          **DATE**

_Tamesha Henderson_      _1-15-14_
**TAMESHA HENDERSON**       **DATE**



**Exhibit 6**

**LOAN #:** ███████

_[signature]_
**Unofficial Witness**

_Janis A. Lindsey_
**Notary Public,** _Janis A. Lindsey_
~~**MCDUFFIE**~~ **County**
_McCormick_                    My Commission Expires May 27, 2021





LOAN #: ▮▮▮▮▮▮

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

on the date set forth above.

_____
BIRUTE LAUKYS                    Closing Attorney

[Notary seal: AMBER SATTERFIELD — NOTARY PUBLIC — MY COMMISSION EXPIRES JUNE 7, 2016 — FULTON COUNTY, GEORGIA]



## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE MCDUFFIE COUNTY, STATE OF GEORGIA, AND IS DESCRIBED AS FOLLOWS:

ALL THAT TRACT OR PARCEL OF LAND, WITH IMPROVEMENTS THEREON, SITUATE, LYING AND BEING IN THE 133RD DISTRICT, G.M. OF MCDUFFIE COUNTY, GEORGIA, CONTAINING 1.23 ACRES ON THE EAST SIDE OF DEARING ACRES ROAD, AND DESIGNATED AS LOT NO. 2, BLOCK D AS SHOWN ON A PLAT FOR FOREST AND LAND SERVICES, INC. PREPARED BY T. LARRY RACHELS, R.L.S. NO. 1730, DATED MAY 19, 1992, A COPY OF WHICH IS RECORDED IN PLAT RECORD S, AT PAGE 315 J IN THE CLERK'S OFFICE OF MCDUFFIE COUNTY SUPERIOR COURT, AND TO WHICH PLAT AND THE OFFICIAL RECORD THEREOF REFERENCE IS HEREBY MADE SPECIFICALLY IN AID OF AND FOR A MORE COMPLETE AND DETAILED DESCRIPTION OF SAID TRACT AS TOITS COURSES, BOUNDS, METES AND DISTANCES.

PARCEL ID #0065D002

THIS BEING THE SAME PROPERTY CONVEYED TO TAMESHA HENDERSON, AN UNMARRIED WOMAN AND JANNIE MIMS, AN UNMARIIED WOMAN FROM TAMESHA HENDERSON AN UNMARRIED WOMAN IN A DEED DATED DECEMBER 9, 2013 AND RECORDED DECEMBER 10, 2013 IN BOOK 00615 PAGE 0460.

Property Commonly Known As: **3721 Headstall Lane Dearing, GA 30808**



1/22/2014

FOM-286227

LOAN #: ▮▮▮▮▮

**Multistate**

| | **NOTE** | FHA Case No.<br>105-8114795-703 |
|---|---|---|

| | | |
|---|---|---|
| **January 15, 2014**<br>[Date] | **Atlanta,**<br>[City] | **Georgia**<br>[State] |

**3721 Headstall Lane, Dearing, GA 30808**
**[Property Address]**

**1.  PARTIES**
    "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender"
means  **First Option Mortgage, LLC, a Limited Liability Company**

and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY; INTEREST**
    In return for a loan received from Lender, Borrower promises to pay the principal sum of  **ONE HUNDRED
THIRTY SEVEN THOUSAND ONE HUNDRED NINETY SIX AND NO/100** * * * * * * * * * * * * * * * * * * * * *  Dollars
(U.S. **$137,196.00**        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the
date of disbursement of the loan proceeds by Lender, at the rate of  **FOUR AND THREE-FOURTHS**            percent
( **4.750 %**         ) per year until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED**
    Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the
same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses
which might result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**
    **(A) Time**
    Borrower shall make a payment of principal and interest to Lender on the  **1ST**            day of each month
beginning on  **March 1, 2014.**                        Any principal and interest remaining on the  **1ST**            day of
**February, 2044**        will be due on that date, which is called the "Maturity Date."
    **(B) Place**
    Payment shall be made at  **400 Interstate North Pkwy SE, Suite 1600**
                             **Atlanta, GA 30339**

or at such place as Lender may designate in writing by notice to Borrower.
    **(C) Amount**
    Each monthly payment of principal and interest will be in the amount of U.S. **$715.68.**            This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest
and other items in the order described in the Security Instrument.
    **(D) Allonge to this Note for payment adjustments**
    If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were
a part of this Note.
[Check applicable box]    ☐ Graduated Payment Allonge        ☐ Growing Equity Allonge
                         ☐ Other [specify]

**5.  BORROWER'S RIGHT TO PREPAY**
    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the
first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount
prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.
If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment
unless Lender agrees in writing to those changes.

**6.  BORROWER'S FAILURE TO PAY**
    **(A) Late Charge for Overdue Payments**
    If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C)
of this Note, by the end of  **15**        calendar days after the payment is due, Lender may collect a late charge in the
amount of  **FOUR**                    percent ( **4.000 %**         ) of the overdue amount of each
payment.

    **(B) Default**
    If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of
the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and
all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent
default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment
in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations.
As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**FHA Multistate Fixed Rate Note - 10/95**                                    Initials: _____
Ellie Mae, Inc.                                Page 1 of 2                    P8700NOT  0408
                                                                             P8700NOT
                                                                             01/15/2014 07:16 AM PST




ORIGINAL NOTE-1

# Exhibit B

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Jannie Mims_ _____     / - 15 - 1 4 **(Seal)**
**JANNIE MIMS**                                                              **DATE**

**Lender: First Option Mortgage, LLC**
**NMLS ID: 123411**
**Loan Originator: Charlie Stalker**
**NMLS ID: 212232**

SEE ALLONGE ATTACHED

**FHA Multistate Fixed Rate Note - 10/95**
Ellie Mae, Inc.                                    Page 2 of 2                          P8700NOT  0408
                                                                                        P8700NOT
                                                                                        5/2014 07:16 AM PST

ORIGINAL NOTE-1

## ALLONGE TO NOTE

LOAN # ▮▮▮▮▮▮

LOAN AMOUNT   $137,196.00

PROPERTY ADDRESS   3721 Headstall Lane
Dearing, GA 30808

ALLONGE TO NOTE DATED   January 15, 2014

IN FAVOR OF   First Option Mortgage, LLC, a Limited Liability Company

AND EXECUTED BY   Jannie Mims

PAY TO THE ORDER OF  FLAGSTAR BANK, FSB  WITHOUT RECOURSE

WITHOUT RECOURSE   First Option Mortgage, LLC, a Limited Liability Company

BY *S Dupre/Stephanie Dupre*

TITLE *Funder*

PAY TO THE ORDER OF

WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: *Adelita A. Shubert*
ADELITA A. SHUBERT
SENIOR VICE PRESIDENT

Document #L444 LFF305
Ellie Mae, Inc.

GN13  0103
GN13
01/15/2014 07:16 AM PST



ORIGINAL NOTE-1

Deed        Doc: ASGN
**Recorded 12/11/2014 11:45AM**

Connie H. Cheatham
Clerk Superior Court, McDuffie County, Ga.
Bk **00628**      Pg    **0066**

# GEORGIA
COUNTY OF **MCDUFFIE**
LOAN NO. ▮▮▮▮▮▮▮▮

PREPARED BY: **SECURITY CONNECTIONS, INC.**
WHEN RECORDED MAIL TO: ATTN: TERRILL NIELSON          , SECURITY CONNECTIONS, INC., 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID 83401,
PH. (208)528-9895

## CORPORATE ASSIGNMENT

FOR VALUE RECEIVED, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR FIRST OPTION MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does this day transfer, assign, convey, and deliver unto **FLAGSTAR BANK, FSB**, located at 5151 **CORPORATE DR., MAIL STOP W-530-1, TROY, MI 48098**, Assignee, its successors, representatives, and assigns, all of Assignor's right, title, and interest in and to that certain Security Deed in the principal sum of **$137,196.00**, dated **JANUARY 15, 2014**, executed by **TAMESHA HENDERSON, AN UNMARRIED WOMAN, AND JANNIE MIMS, AN UNMARRIED WOMAN, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP**, Original Grantor ("Borrower"), to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR FIRST OPTION MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**, Original Grantee ("Lender"), and filed for record and recorded on **JANUARY 27, 2014** in Deed Book 00618 at Page 0106 in the Office of the Clerk of the Superior Court in the County of **MCDUFFIE**, State of **GEORGIA**.

**AS DESCRIBED IN SAID SECURITY DEED**

The Assignor herein specifically transfers, conveys and assigns to the above Assignee, its successors, representatives, and assigns the aforesaid Deed of Trust, the property described therein, together with all the powers, options, rights, privileges, and immunities contained therein on the undersigned.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this 11/18/2014 .

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

_____
Gina Gray
Vice President

_____ Witness
NURFETA BEKTIC

_____
Dawn Berry
Vice President

_____ Witness
Cardinal C. Mathis

STATE OF FL                COUNTY OF DUVAL                ) ss.
On 11-18-14 , before me, LORI RICHARD , personally appeared _____ Dawn Berry known to me to be the Vice President and _____ Gina Gray and Vice President of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** the corporation that executed the instrument or the individuals who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____ (COMMISSION EXP. 1-24-16 )
NOTARY PUBLIC

**LORI RICHARD**
Commission # EE 163155
My Commission Expires
**January 24, 2016**